222684 BUSTAMANTE vs. KIND LLC Mr. Garber Thank you, your honors, and if it may please the court, Todd Garber for the appellants. Here the appellants presented no less than five pieces of evidence that should have precluded summary judgment in this case. We have admissions by defendants that the products at issue here contained artificial and synthetic ingredients, and reference to that can be found at SA 426, and that by containing these artificial and synthetic ingredients, the product failed to meet the standard to be labeled as natural. Those are the defendant's own documents and statements. We have defendant's internal surveys that show that consumer expectations that a food label is all natural would not contain synthetic or artificial ingredients, SA 427. We have the 1993 and 2015 FDA informal guidance on defining the use of natural in food, stating that if the food is going to contain the term natural on its label, it should be free from synthetic and artificial ingredients, SA 1172. And then we also have the expert reports of Dr. Dennis and Dr. Teutob, which appellants believe were wrongfully excluded by the district court. Additionally, we have the simple dictionary definition of the term natural, which Judge Pauly relied on. Can I ask you, is your view, if the expert testimony, well, your view, at least, is stating your briefs, that even aside from the expert testimony, that the other items you feel are enough to establish, to go forward here, is that, so, and then I guess that leads me to the question of, and probably you're going to get to this next, that how is it then that the exclusion of the expert testimony or the expert evidence is an abuse of discretion if it's not actually necessary to your case going forward? Sure, Your Honor. Yes, we believe that absent even the expert reports, if they remain excluded, plaintiffs have more than sufficient evidence to go forward with their case, given the documents produced, the plaintiff's testimony, the FDA guidance. This has been held sufficient in other cases. Do plaintiffs have an obligation to show that a reasonable consumer acting reasonably would be misled? And so if you have some internal documents from kind, it doesn't tell you what consumers think, does it? I respectfully disagree, Your Honor, because those internal documents are consumer surveys that show what a reasonable consumer would think, showing that 86% of consumers would not think that a food labeled as natural would contain artificial or synthetic ingredients. So it's not simply a defendant's employee's interpretation or internal kind people. We're talking about surveys that they did, similar to the ones that Dr. Dennis did. Now they quibble as to the methodology that Dr. Dennis used, but it's the same kind of surveys that produced those responses. So we should not need Dr. Dennis or Dr. Trudolf to be reinstated into the case to move forward. But why is it still an abuse of discretion? Because plaintiffs should be entitled to put on the case as they would want to put on the case and shouldn't have their evidence restricted. So if the court, in excluding the reports, abused its discretion because it had a dispute with the methodology and implementation, that should go to the weight, as the case law states, not to the admissibility. And plaintiffs should be able to put forth then both those experts as well to bolster their case to make it even stronger. But should it survive summary judgment? It certainly should, based on simply the other evidence that was presented. So let's talk about the dictionary definition. I think the dictionary definition that was proffered has to do with sort of not man-made. I mean, a kind bar is wrapped in plastic. It's clearly man-made. I'm trying to understand how without the expert testimony, and I know what you're saying about the kind surveys. My understanding of the internal surveys that you're talking about is that actually, I'm not sure they say 82 percent or 86 percent of consumers think natural means. It doesn't have this. I think it says 80-something percent of consumers think that a product that does not include these products, these items, falls within their definition of natural, which is not the same, right? That's not coextensive. But how does the dictionary definition help you? How does that show a reasonable consumer's take on natural? Because I think that's one of your arguments, that the dictionary definition is enough. Sure. And Judge Pauly addressed that in the class cert decision, specifically referring to the dictionary definition as well as the other definitions that plaintiffs proffered at the class certification stage, saying that they can coexist and that a singular definition of natural or all-natural is not necessary. And Judge Buchwald, after Judge Pauly's passing, reversed course and hinders her decision. But the standard for – Judge Pauly was talking about whether you can have a class, and it is not uncommon to get through the evidence and then find out that a case is not going forward even though a class has been certified. It doesn't mean you win. Absolutely, Your Honor. But if you look at Judge Pauly's class cert decision, within the class certification decision, Judge Pauly held that if plaintiffs were able to identify a singular ingredient that a jury found to be non-natural, they would be entitled to damages. That a jury found a reasonable consumer would believe didn't fall within the definition of all-natural. Right? That would be what you had to prove. Correct, Your Honor. So what Judge Pauly was saying was it could be citric acid, it could be hexane, it could be heavy metals, which was argued about earlier this morning here. It could be anything. That's what Judge Pauly was saying for commonality and typicality. It could be any one of those things. But at the end of the day, what plaintiffs would have to prove is that a reasonable consumer acting reasonably would believe that the inclusion of that ingredient or that element, that item in this product rendered the label all-natural misleading. Those are different inquiries. Correct, Your Honor. But I believe the proof set forth at the summary judgment stage supported that proposition. I guess I just encourage you to not, you relied very heavily on the idea that Judge Pauly's class certification rulings somehow predetermined the outcome of this matter. And I find that a little problematic. Understood, Your Honor. I think what we were going for in that was that Judge Pauly, whether it was dicta within the class certification decision or not, because he was certifying class, obviously, and not citing summary judgment, set forth how plaintiffs could go about proving their case. And it appeared to us, and I think it's set forth in the briefs pretty clearly, that Judge Buchwald, most of her decision hinged on the failure to present a uniform definition of all-natural. But there may be different attempts at proof, right? So Judge Pauly is saying all-natural might mean lots of things to different people, but whatever it means, it means no GMOs, right? In fact, he emphasizes it always appears next to the no GMO warning and so on. So he says you're going to have commonality because at the very least, people could say they were misled by the all-natural warning because it contains GMOs, right? But then by the time you get to Judge Buchwald, you've dropped the challenge to the no GMOs warning and don't argue that kind use GMOs. And so now you have to understand what is common and what misleads reasonable consumers. And so you could have said, well, all-natural means many things to many different people, but whatever it means, it means that everybody would agree that it excludes some particular ingredient and then show that kind includes that ingredient. But actually, you know, Dr. Dennis put forward this definition of artificial and synthetic, right? And you didn't – I mean, this is not the case you're putting on, right? So at that stage. And so Judge Buchwald says, well, you haven't shown that everybody has a common definition, right? But if the common definition were if one particular ingredient that everybody would say is not included in the manner of all-natural, that would be a way of putting on the case, wouldn't it be? She just doesn't think that you did that. Yeah. Your Honor, I absolutely agree with what you just said, but I firmly believe that Plaintiffs did. And that proof was set forth through – So what is the ingredient that you've shown that a reasonable consumer would understand is not being included in an all-natural product and that is in the kind bars? They're listed chapter and verse in the briefs. The vitamins, for example, where the defendants admit that they are synthetic and artificial. So yes, what you said about Judge Pauli and the non-GMO, that would have been one way. But later on in that same decision, he divorces the all-natural from the non-GMO and speaks in terms of artificial and synthetic as it relates to simply the all-natural claim without any reference in that section to the non-GMO. So Judge Buchholz has this problem with the artificial and synthetic that the survey sort of spoon-feeds them that definition and then also doesn't explain how they understand artificial and synthetic, right? So – and then the analysis by Dr. Tutov doesn't even rely on that definition about artificial and synthetic, right? He's asked, is that a proper definition of all-natural? And he says, no, actually the inquiry is much more nuanced and complicated than that, right? We were trying to present as many different ways to prove our case, Your Honor. And one of them was from a chemical perspective. You're saying the simplest way to prove your case is that you have the survey evidence from Dennis that says all-natural means not artificial or synthetic. And you say you have an admission from KIND that the vitamin C that they put in some of their products is synthetic. Is that – As well as other ingredients. All-natural was misleading to a reasonable consumer because a reasonable consumer would think that it wouldn't contain vitamin C and it did. In a synthetic form, Your Honor, because if you – even if the consumer, reasonable consumer is expected to turn the bar over and look at the ingredients, if they see vitamin C, they might think that that can occur in a natural form or a synthetic artificial form. But here, KIND admits that it occurred in the artificial and synthetic form. So that would be misleading to a reasonable consumer. I think you hit the nail on the head where you were talking about all-natural can mean many different things. But at the very least, it means this. Another example would be kosher food. Kosher food has to be prepared and consumed in accordance with Jewish law. But it can have slight variations in how someone could interpret that. But everyone would understand the definition of kosher food doesn't include bacon. And that's really what we're talking about here. We're just slowing it down. Well, it just bustles with the things that you don't actually have a common understanding of what synthetic means, right? I think you can rely on the dictionary definition of what synthetic and artificial are, Your Honor. Which is what? Not that they are man-made. And that was one of the dictionary definitions of all-natural. So if the three bars had just added pieces of oranges to their bars to add vitamin C, that would be natural. But if they add whatever they added, that's synthetic. Correct, Your Honor. They could have added vitamin C in a different form. And as it relates to that ingredient, then that wouldn't have been part of our case. That's why we went through all the ingredients. Because a lot of those ingredients could have come in one form or the other. But we gathered evidence to show that in this case, they came from an artificial way or they were synthesized in a lab as opposed to coming from the natural way. But how do you show that, right? So the report from Dr. Tutov talks about the ingredients in the abstract, right? He says, you know, generally canola oil is made through an industrial process and so it wouldn't be considered natural. But it doesn't talk about the particular way that canola oil was added to the Kind bars, right? Respectfully, Your Honor, I disagree. And we said in our brief where Dr. Tutov, using Kind's internal documents, looks at the sourcing that Kind actually used. So he talks about it in general. Canola oil in general, you know, 86% of canola oil is GMO or it's sourced this way. And then we have Kind's sourcing documents for how they sourced that ingredient. And then he distills it down and it relates directly to the ingredients in this case. The district court just didn't look at that. But that's in Dr. Tutov's report. He does not only talk in generalities. I know my time is up. But, you know, just on the decertification, I feel as though the decertification kind of hinges on the grant of summary judgment and the other issues. So I don't know that there's more. Well, does it hinge on the other issues? So if, in fact, the theory is that actually there isn't a common understanding of all natural among consumers, that they have different understandings, but we think that there's some ingredient that might be excluded from them. Might it be that there are different defenses that Kind would have if there's lots of different understandings of all natural on the part of consumers? Hypothetically, Your Honor, but an affirmative defense does not preclude class certification nor warrant decertification in this case. I'm not talking about affirmative defenses. I'm just saying the defenses would be different. So if some of the consumers think that all natural means that it has to be pulled out of the ground or some of them mean that it has to be whole and not modified and some of them means that it has to be not synthetic, Kind would have different arguments in response to all of those as to whether, in fact, what they did was pull something out of the ground or whether that is an appropriate definition of all natural and so on. The arguments would be different with respect to each. Your Honor, I think that's why it relates back to the grant of summary judgment in and of itself, that whatever all natural means and there doesn't have to be a singular definition, we know it means no artificial and synthetic ingredients. So that's the case that's going to be going forward. So Kind would not have different defenses for different people's interpretation because whatever their different interpretation is, it's distilled down to... And you think people wouldn't have different definitions of synthetic because we have a dictionary definition? There's a common understanding of synthetic. Correct, Your Honor. Adopting the district court's rationale for both summary judgment and decertification in this case would be a death knell to any case where there's not a singular definition of the claim that the plaintiffs are alleging is misleading. But that's why claims are misleading. You don't have to have a singular definition of a labelling claim if that's the claim that you're going after. Well, sometimes you do, right? So if you're saying that... If you were still challenging the non-GMO warning and your claim was it says no GMOs and, in fact, the product contains GMOs, that's pretty clearly that kind of claim, right? Yes. In that case, it's an absolute. But Judge Pauly even talked about in terms of for the natural claim, even with multiple definitions, the claim is still absolute and that's why it was appropriate for class treatment. It's still just an up-or-down question that can be shown to apply across the board to the entire class. Okay. Thank you very much, Mr. Garber. You've reserved time for rebuttals, so we'll hear from you again. Thank you very much. Ms. Borders. Good afternoon. May it please the Court, Carrie Borders from King & Spalding for Defendant Kind, LLC. So, Your Honors, this is a false advertising case and like all false advertising cases, it is governed by the reasonable consumer standard. So there's no dispute that in order to get past summary judgment, the plaintiffs were required to come forward with admissible evidence demonstrating that reasonable consumers were deceived by the all-natural statement on the kind products. And as we've heard from plaintiffs' counsel this morning, all they've come forward with is this definition that all-natural means no artificial or synthetic. So essentially what they've said is all-natural means not unnatural. But they still haven't demonstrated how the reasonable consumer interprets the all-natural statement on the kind bar and how whatever that interpretation is, how kind bars fail to meet that expectation. We've heard from Mr. Garber that they have thought... Well, I think they've shown what Mr. Garber said, which is there's an understanding that all-natural means not artificial or synthetic. There are natural and synthetic versions of vitamin C, and you can show that the kind bars have the synthetic version of vitamin C. What plaintiffs haven't shown and what their plaintiffs' expert avoided with a 10-foot pole is what reasonable consumers think no artificial or synthetic actually means and in particular what no artificial and synthetic actually means in connection with the kind bar. So for instance, and it's not by accident that the only artificial or synthetic ingredient that plaintiffs have identified is the vitamins. They've never argued any other ingredient is potentially artificial or synthetic. And the synthetic vitamins A, C, and E only appeared on the kind plus antioxidant bars, which clearly stated on the front of PAC that they're kind antioxidants with vitamins A, C, and E. So consumers clearly understood that they were buying a product that contained vitamins A, C, and E, and nowhere in any of the record evidence is there any demonstration that consumers think that vitamins A, C, and E are synthetic or that they're incompatible with something that's natural, especially when they're fully disclosed on the front of PAC and that consumers understand that this is not a kind bar with added oranges to it. I understand that it seems weird to say that something is not all natural because it contains vitamin C, but I guess the argument is that there is a synthetic version of vitamin C and there is a natural version of vitamin C and so maybe a consumer would have thought oh, they added little bits of oranges to the bar in order to add vitamin C and that's a natural form of vitamin C as opposed to what they added. Could a consumer have thought that? I assume it's hypothetically possible. There's been no evidence in this case that there is a natural form of vitamin C that plaintiffs think should have been in the product, but there's certainly been no testimony by any plaintiff. There's never been any survey. There's no evidence anywhere in the record as to what consumers actually think about vitamins. Do they think there's a natural form of vitamin C when you just see an addition of vitamin C? Mr. Garber said that your client admitted that the version of vitamin C that is in Kind Bars is synthetic. Do you concede that it's synthetic? We do, Your Honor. We concede that all vitamins, additional vitamins that are added are synthetic. Whenever you add additional vitamins, it's synthetic. Correct. Is the theory that the reasonable consumer standard imports some not necessarily knowledge, but some reasonable perception that, you know, you get the article that says, here's the 10 superfoods you should eat every day, and you realize that you would eat 4,000 calories of blueberries and walnuts and you couldn't eat anything else, that in order to get 50% of your daily value in a Kind Bar of A, C, and E, it would either have to be this big or it would have to have some concentrated you couldn't put enough oranges in there, basically, and enough carrots and enough whatever vitamin E comes in. Is that so that we sort of have to impute to a reasonable consumer the fact that they either do or should sort of get that there has to be some manipulation of the vitamin to get it to fit into a little Kind Bar that goes in your pocket? That's absolutely true, Your Honor. And in addition,  that conclusion would have been affirmed by the ingredient list which identifies, for example, vitamin C ascorbic acid. So we say, not only, so first you should sort of guess that, but also you should flip the bar over. On the front it says all natural, on the back it says expressly vitamin C, parens, ascorbic acid or vice versa, I don't know which way the parens are, but that it's expressly, not just that it's on this plus antioxidants thing, but that the ingredient list doesn't just say vitamin C, it actually says the name of the compound. Correct. And it's not by accident, because this case has been litigated for seven years, and obviously on appeal we're really hearing about these vitamins as being artificial and synthetic, but again, there's no evidence as to what the reasonable consumer actually thinks about this. Can you come up with a scenario where you think that a product having all natural on it would be subject to this type of challenge? Because I think part of what you argue is that there's no either that there's no accepted definition or that they haven't demonstrated that, I shouldn't say accepted definition, what the reasonable consumer's conception of all natural is, and so I'm just wondering, do you think that there could be a product that could be labeled all natural that would be subject to challenge, or would there always be the defense of, well, all natural is sort of it doesn't have one meaning, and it takes a lot to show that this is what it means to this consumer. Well, certainly natural itself, as it's been discussed by FDA, as it's been discussed by plaintiffs' experts and generally in all statements, is that natural is kind of an amorphous term that doesn't necessarily have a specific meaning, as even plaintiffs have come forward in their complaint it's got five different definitions. That being said, the cases that plaintiffs rely on, for example, in was a statement of natural cheese, and the issue there was, did consumers understand that what the plaintiff in Morales argued that the statement natural cheese was deceptive because it contained a natto, an ingredient added for color. Even though that ingredient was natural, they said, my expectation of natural cheese is that it wouldn't have an ingredient added for color. So certainly in that case, there was, as the district court found, a triable issue of fact of what the consumer's expectation was with respect to the term natural cheese and whether or not that included an ingredient added for color. And to do that, do you think that there would have to be a survey of consumers that says, when you're advertising natural cheese, would you expect there to be a natto? Or maybe as the open-ended, it would have to say what do you expect when you have natural cheese and they have to say no additives to the cheese production process? Correct. And I think you'd even have to go an extra step in that case and show that if whether or not the additive was natural or artificial or synthetic, and I think consumers might have different expectations Do you think that the plaintiffs have put in evidence that would allow them to conclude that a reasonable consumer would not expect artificial or synthetic ingredients in a product advertised as all natural? Or even that is not sufficient? I don't think they've put in any evidence that would demonstrate that a reasonable consumer of a Kind bar thinks that the all natural statement means that there's no artificial or synthetic ingredients, regardless of what that means. And the reason why is because Dr. Dennis is spoon-feeding them an answer as Dr. Buchwald said, and she doesn't think that that's reliable. Correct. What about the internal surveys from your client? So the internal survey is not actually a Kind survey, it's a hearsay, it's inadmissible, but in any event, all it did was say, okay here's some potential definitions of all natural and what do consumers think that they mean. And it didn't define artificial or synthetic, and it certainly didn't provide any evidence as to what a consumer of a Kind bar would expect with respect to the all natural statement. So you said a moment ago that the version of vitamin C that you do put in your bars is synthetic. Correct. Do you think a reasonable consumer would agree that it's synthetic, or would understand it as synthetic? Yes. Would a reasonable consumer understand it as unnatural? That question has not been answered. I don't think a reasonable consumer would think it's not natural, but there's no evidence in the record one way or the other, Your Honor. So you think that the real failure of proof is that there isn't reliable evidence that shows that a reasonable consumer would think that the label all natural means the product does not contain any synthetic ingredients? I think that's part of the problem. The problem is that they haven't shown how the reasonable consumer interprets that statement. It doesn't contain synthetic ingredients. What a reasonable consumer's expectation is of what synthetic means and what ingredient the reasonable consumer wouldn't expect to be in there that's actually in there. I mean, they would have to show that a reasonable consumer wouldn't expect the KIND bars to contain synthetic vitamin C for example, and now my expectation has been not met, and I've suffered an economic injury because this KIND bar purchase has vitamin C in it. We should understand a reasonable consumer acting reasonably to read the whole package. So they're not entitled to just read the label that says all natural and say, oh, it must not include a synthetic version of vitamin C if in fact the label says we've added vitamin C to this product and it includes it in the ingredient list. That's correct, and that's why the district court in its order, I know it's in a footnote, but said this claim isn't even plausible. That claim shouldn't even make it past the pleading stage because it's not plausible that a reasonable consumer would be deceived because of the addition of vitamins, because consumers know that the vitamins are synthetic. Okay. Thank you very much, Ms. Borders. We'll turn back to Mr. Garber on rebuttal. I'd like to hit on the last point that Ms. Borders made, that the district court said we shouldn't have made it beyond the pleading stage, but we did and that was the law of the case, and that's the framework through which we litigated the case with an understanding of here's our case that we set forth and the district court saying, yeah, that states the claim, and then we put forth facts that support that theory that was consistent all along in relation to the vitamins and synthetic and artificial ingredients. Judge Bonacci, you hit it spot on with the vitamin example, and Ms. Borders did not have an answer for why a consumer would think that there would be synthetic artificial ingredients in a product labeled natural, particularly when there is a way to put in a natural form of those ingredients. Is there a way, I mean we just sort of had this discussion with my Ms. Borders and essentially with my because you couldn't include just a whole lot of oranges in the bar if you're actually going to meet that level of vitamin C. Well then they shouldn't be putting vitamin C as an ingredient if they want to label it all natural. That's their choice whether they want to put forth to a consumer that there's some benefits to the product in the form of vitamins But do you agree that the labeling that says we've added vitamin C and they put vitamin C, ascorbic acid in the ingredients and they put the daily value that's contained in the product all on the packaging that communicates that they've added extra vitamin C? I believe there's evidence in the record, in Kyan's own documents that there are ways to source these ingredients naturally as opposed to in an artificial or synthetic form. And going to the other point that's tied to what you just said Judge Manasci regarding the reasonable consumer having to look at the whole label, that's just simply not the case law as set forth under the laws in the Second Circuit that's come up on numerous labeling cases and in circuits across the country that a is not in the supermarket expected to have to take the food product, look at it look at the claims on the front and then turn it over to the back and then go through the ingredients list I don't know why you're describing that as such a complicated process. I mean, you're talking about a consumer acting reasonably, it's a consumer who cares about the ingredients of the product One of the ingredients that comes up as possibly unnatural is Dr. Tuttle thinks that cocoa powder is unnatural, right? Because it doesn't appear as So, you're telling me that a consumer would be acting reasonably if he looks at the front of the label and says all natural and he says, oh, because it says all natural I know! There's no cocoa powder in this product. I don't even need to read the ingredients I'm going to go home and eat it and then he'd be surprised to discover that there's cocoa powder even though the label says cocoa powder in the ingredients list And that would be a reasonable consumer acting reasonably? I don't really Yes, Your Honor That would be And there are cases that where defendants have put forth that standard of the motion at this stage and the courts have rejected it That when you label a pasta as all natural I get the argument that you made earlier about how there's some ingredients where there's a natural version and there's a non-natural version and so the ingredients list doesn't communicate to you or might not communicate to you which version is in the product But if your objection is just to a particular ingredient and it is plainly stated there in the ingredients list I don't really see how the label is then misleading Your Honor That's dividing up, there are 39 ingredients at issue here So, yeah, perhaps one the court could have found, that one would not be misleading as it relates to an all natural claim cocoa powder, but when you're talking about the other ingredients, the synthetic vitamins, when you're talking about the soy lecithin, which appears in the most products at issue in this case, where they use a hexane extraction method to source the soy lecithin, which could be a natural ingredient, and evidence in the record that they could have used a natural extraction process, but instead used a dangerous chemical extraction process to get the soy lecithin that then went into their products and they did it because it would have been way more expensive to do the natural process as opposed to the hexane process, so that affects the entire marketplace. You have consumers with limited budgets, they see claims on labels and they have to decide how they're going to allocate their money. Oh, this says all natural so, you know, I'm going to spend a little more on this, because they're charging a little more because I think there's going to be some benefits here but now I have less money to spend on something else and for their competitors that are actually doing it right, when they say something's all natural they're charging more because they are sourcing it to more expensive products, they're getting just